LEITZSEY v. THE COLUMBIA WATER POWER COMPANY.

1. JUDICIAL NOTICE—COURT.—The Court properly took *judicial* notice of the act of 1887 to incorporate the board of trustees of the Columbia Canal, and that Broad River is a navigable stream,

2. COMPLAINT—PLEADING—DAMAGES—DEMURRER.—The complaint in this action alleges injury after the notice to abate the nuisance complained of, and is not demurrable on that point.

3. CONDEMNATION—REMEDY—19 STAT., 1090, CONSTRUED.—The act to incorporate the board of trustees of the Columbia Canal Co., &c. (19 Stat., 1090), gives authority to take private property for the erection of the canal and dam, and provides the manner of obtaining compensation therefor, and such remedy is exclusive.

4. COMPLAINT—PLEADING—DAMAGES—NEGLIGENCE—DEMURRER—NONSUIT.—The complaint in this action does not contain any allegations of injuries resulting from negligence in the performance of the acts permitted by the act to incorporate the board of trustees of the Columbia Canal, &c., and is demurrable on that point.

Before BUCHANAN, J., Lexington, December, 1895.
Affirmed.

Action by George F. Leitzsey against the Columbia
Water Power Company. The following is so much of the
complaint as states the first cause of action:

1. That the defendant was, at the times hereinafter men-
tioned, and now is, a corporation, duly created and organ-
ized under and by virtue of the laws of the said State.

2. That the plaintiff was, at the time of the commission
of the grievances hereinafter set forth, and now is, the
owner in fee and in possession of a tract of land, containing
420 acres, more or less, lying on the right bank of Broad
River, in the said county and State; bounded on the north
by lands of F. W. Wagener, on the east by the said river,
on the south by lands of the State Penitentiary, and on the
west by the Newberry Road, separating this tract from
lands of the estates of Eli Huffman and Isaiah Haltiwanger,
and also by lands of the estate of Godfrey B. Nunnamaker;
and that running across or near to the said land, leading
into the said river, is a branch and a ditch, by means of
which and the said river the said land was, prior to the
commission of the said grievances and from time immemo-
rial, accustomed to be drained for agricultural purposes.

3. That on or about the      day of      , 1889, the board
of trustees of the Columbia Canal, a corporation duly cre-
ated and organized under and by virtue of the laws of the
said State, raised and erected a dam, known as the Colum-
bia Canal Dam, across the current of the said river, at a
point a short distance below the plaintiff's said tract of land.
That thereafter, on or about the 11th day of January, 1892,
the said board of trustees of the Columbia Canal transferred
and conveyed to the said defendant the said dam and all
and singular the property thereto appertaining, and that
the said defendant has since been, and now is, the owner
and in possession thereof.

4. That since the said 11th day of January, 1892, the

said defendant has kept up, maintained, and continued, and now maintains, keeps up, and continues, the said dam as aforesaid; so that by reason thereof the waters of the said river are raised six feet in the channel thereof and greatly increased in quantity therein and in the said branch and ditch, and the free, natural, and accustomed flow of the said water and of sand and other sterile earth through the channels of the said river and of the said branch and ditch has been, and now is, hindered and obstructed; and the said river and the said branch and ditch have been, and now are, prevented and hindered from effecting the proper, natural, and usual drainage of the said land; the said waters are caused to percolate through and water-log and water-soak forty acres of the said land lying on the said river; and in times of ordinary freshet, the waters of the said river are caused to flow back upon and inundate the said forty acres of the said land, depositing thereon quantities of sand and other sterile earth, all of which, prior to the commission of the said grievances and from time immemorial, the said waters were not accustomed to do. And the plaintiff further avers that, prior to the grievances hereinbefore complained of, the said forty acres of the said land were of unusual and great fertility, and were not subject to overflow by the waters of the said river so as to destroy or materially injure the crops growing thereon; and that since the commission of the said grievances, and by reason thereof, the said lands have become liable to frequent and prolonged freshets, overflowing and inundating the said lands to such an extent as to destroy the crops growing thereon, and wholly to deter and prevent the use of the said lands for agricultural purposes, or for any valuable purpose whatever. And the plaintiff further avers that, by reason of the said grievances, so as aforesaid caused by the keeping up, maintaining, and continuing of the said dam by the said defendant as aforesaid, the said forty acres of land, which prior thereto were reasonably worth $75 per acre, have become water-logged, unproductive, uncultivable, and wholly

valueless to the plaintiff, to the great nuisance and injury of the plaintiff, and to his damage $4,000.

5. That on the 2d day of August, 1894, the plaintiff gave the defendant notice of the said nuisance, and then requested the defendant to remove the same; but that the said defendant has failed and refused so to do.

6. That the said keeping up, maintaining, and continuing of the said dam has heretofore been, and now is, without the consent of the plaintiff; that the said plaintiff has received no compensation for the injury sustained by him as hereinbefore set forth; and by reason of the premises, the plaintiff is entitled to have of and from the said defendant compensation in the said amount of $4,000.

The defendant answered, and on the trial of the case interposed an oral demurrer to the complaint, for that it appeared upon the face of the complaint that the same did not state facts sufficient to constitute a cause of action; and, in accordance with Rule 18 of the Circuit Court, filed and submitted to the Court the grounds of demurrer, and thereupon entered a motion that the complaint be dismissed. The statement of the said grounds is as follows:

The defendant, the Columbia Water Power Company, moves the Court to dismiss the complaint in this action on the ground, that it appears from the face of the complaint that neither in what is therein stated to be a first cause of action, nor in that which is stated to be a second cause of action, does it state facts sufficient to constitute a cause of action against this defendant. Both of said causes of action objected to are insufficient, in this: That after it is alleged in the third paragraph of each of said causes of action: "That on the      day of      , 1889, the board of trustees of the Columbia Canal, a corporation duly created and organized under and by virtue of the laws of said State, raised and erected a dam, known as the Columbia Canal Dam, across the current of the said river, at a point a short distance below the plaintiff's said tract of land; and that there-

after, on or about the 11th day of January, 1892, the said board of trustees of the Columbia Canal transferred and conveyed to the said defendant the said dam and all and singular the property thereto appertaining; and that the said defendant has since been, and now is, the owner, and is in possession thereof," it does not allege any negligence or want of care on the part of the board of trustees or their grantee, either in the construction of the dam or in its maintenance or repair, or that the defendant has done anything contrary to any contract or obligation arising out of any agreement with the plaintiff with reference to the construction, maintenance or repair of the said dam, and its effect upon the land claimed to be injured in the said cause of action. The action brought by the plaintiff by said complaint is a common law action for injury to his freehold, or, at least, for compensation for the taking for the use of a public purpose of a private property. The Court will take cognizance of the fact that, under the Constitution and laws of the State, Broad River is a navigable stream, and declared to be a public highway. The Court is bound to take further judicial notice of the act of the General Assembly, referred to in said third paragraph, creating the board of trustees of the Columbia Canal, and all of its provisions—the same being a public act passed for a public purpose—and of the act of 1890 amendatory thereof. Taking such judicial notice, it appears that under its provisions the said board of trustees had full authority, and were commanded and directed, to erect said dam, and to flow back the waters of the said navigable stream, and to use private property in the construction and maintenance of the said canal and dam; and that for the taking and use of such private property, said act makes provision for the condemnation of such lands and a remedy to the owner to secure compensation for the taking and use of such private property. That the Court, therefore, must hold that said remedy is exclusive, unless the board of trustees exceeded their authority or did not conform to such provisions.

There is no allegation in the complaint that they exceeded their authority or did not conform to such provisions; but it is alleged in paragraph 6 of each of said causes of action, "that the said keeping up, maintaining, and continuing of the said dam has heretofore been, and now is, without the consent of the plaintiff; that the said plaintiff has received no compensation for the injury received by him, as heretofore set forth, and by reason of the premises the plaintiff is entitled to have of and from the said defendant compensation," &c.

That said allegation is insufficient, because it does not aver that the dam was erected without the consent of the plaintiff, nor that entry and use was made of the private property without the permission of the plaintiff. Further, it fails to allege that the taking complained of was after notification in writing by plaintiff to defendant of plaintiff's refusal of consent thereto, or that said taking and use complained of was, and is, without the permission of the plaintiff. The complaint, therefore, does not show that the plaintiff did not have his remedy under section 1752 of the Revised Statutes of 1893. The statute incorporating the board of trustees, authorizing the erection of the dam, having, then, provided a remedy for the taking and use of plaintiff's property, he is confined to such remedy, and the complaint not showing upon its face that the case there alleged is one not provided for by said statute, it fails to state a cause of action.

It is further submitted by the defendant, that the complaint upon its face shows no actionable injury to the plaintiff between the time of the commencement of the action and of the refusal of the defendant to remove the dam. The refusal of the defendant to remove the dam was dated the 14th August, 1894. The action was commenced the 17th of August, 1894. During this interval, it is not alleged that any damage occurred to the plaintiff by reason of the flowing of his land by prolonged freshets in the river, or any injury thereto—as in law the defendant assuming

that its liability, if liable at all, could only be liable for such injury as arose from the time of its refusal to remove, and the complaint showing on its face no actionable injury from said time of refusal to remove to the commencement of the action, it does not state facts sufficient to constitute a cause of action.

After argument, the demurrer was sustained upon the several grounds set forth therein; and accordingly an order was entered by the Court as follows:

The defendant interposes an oral demurrer to the complaint, upon the ground that it does not state facts sufficient to constitute a cause of action, and moves to dismiss the said complaint upon the ground that the same does not state a cause of action, as set forth in the written grounds filed in the cause, pursuant to Rule 18 of the Circuit Court. Now, upon hearing argument of counsel for plaintiff and defendant, it is ordered and adjudged, that the said oral demurrer be sustained, and the said complaint is hereby dismissed. The Court reserves the right hereafter to file its grounds and reasons for sustaining the demurrer and dismissing the complaint, if it may see fit.

From this order the plaintiff appeals on the following exceptions:

1. Because his Honor erred in sustaining the said objection and in granting the said motion to dismiss, and in dismissing the complaint herein.

2. Because his Honor erred in sustaining the several grounds of objection to the sufficiency of the said complaint, submitted by the defendant as set forth in writing, pursuant to Rule 18 of the Circuit Court, and filed in the office of the clerk of the said Court on the 11th day of December, 1895.

3. Because his Honor erred in holding that, inasmuch as the creation of the dam complained of was authorized by an act of the General Assembly of the said State, the continuance thereof by the defendant is not and cannot be deemed

a nuisance against the property of the plaintiff above the dam so erected and continued.

4. Because his Honor erred in holding that the complaint is insufficient, in that it does not allege any negligence or want of care on the part of the board of trustees, either in the construction of the dam or in its maintenance and repair, or that the defendant has done anything contrary to any contract or obligation arising out of any agreement with the plaintiff, with reference to the construction, maintenance and repair of the said dam, or its effect upon the lands claimed to be injured in said complaint.

5. Because his Honor erred in holding that "by the act of the General Assembly of the said State creating the board of trustees of the Columbia Canal, and the act of 1890 amendatory thereof, the said board of trustees were commanded and directed to erect said dam * * * and to use private property in the construction and maintenance of said canal or dam; and that for the taking and use of such private property the said act makes provision for the condemnation of such lands and a remedy to the owner to secure compensation for the taking and use of such private property; and that said remedy is exclusive, unless the board of trustees exceeded their authority, or did not conform to such provisions;" whereas his Honor should have held that the said acts do not apply to, or provide a remedy for, the taking, as set forth in the said complaint; and it appearing upon the face of the complaint that the lands in question were not taken by the defendant for the purpose of acquiring rights of way, but only by way of injuries to the freehold of the plaintiff, caused by the erection and continuance of the said dam, the plaintiff is entitled to maintain his action against the defendant at common law for damages, by reason of the grievances set forth in the said complaint.

6. Because his Honor erred in holding that the complaint herein does not sufficiently aver any actionable injury to the lands of the plaintiff during the period between the time of

the refusal of the defendant to abate the nuisance complained of and the date of the commencement of this action.

7. Because in taking judicial cognizance .that, under the Constitution and laws of this State, Broad River is a navigable stream, and declared to be a public highway, his Honor erred in not deciding that this fact is immaterial and impertinent to the action, and does not preclude the action of the plaintiff for compensation for injuries done to him by the erection and continuance of the said dam across the said stream; and in not deciding that in the case of a fresh water stream declared by legislative authority to be a navigable stream and public highway, the riparian owner is entitled to compensation for any injury resulting from any improvement of such navigation, or for any other public purpose whatsoever; and that any injury to riparian rights for public use is a taking for which compensation must be made.

8. Because his Honor erred in holding that the complaint herein is insufficient, in that it does not state that the said dam was erected without the consent of the plaintiff, and that the private property was taken as set forth in the said complaint, after notification in writing by the plaintiff to the defendant of the plaintiff's refusal to consent thereto, and without the permission of the plaintiff.

*Messrs. Melton & Melton* and *J. S. Muller*, for appellant, cite: *Common Law Action:* 1 Wood on Nuisances, 1; 16 Ency., 924, 925; 3 Hill, 149; 2 Hill, 634, 639; Gould on W. C., sec. 204; Cooley on Torts, 585; 35 N. Y., 520; 1 Wood on N., 346–8, 353, 356; 46 S. C., 32; 4 Ency., 976; 5 Cowan, 165; 57 Me., 481; 44 N. H., 160; 36 N. J. L., 335; 16 Ency., 1003; 2 Wood on N., chap. XXIII., 1046; Angell on W. C., sec. 332; 34 Am. Dec., 184; Wash. on Easements, 571; 12 Gratt., 332; 26 Minn., 222; 29 Penn. St., 85; 1 Hill, 385; 30 S. C., 545; 1 Wood on N., p. 615, and sec. 430; 16 Ency., 265; Lewis on Em. Dom., sec. 168; 51 N. H., 504; 1 Wood on N., 471; 13 Wall, 166; 16 S. E. R., 181. *Remedy by Stat. not exclusive:* 19 Stat., 1090; 4 Rich., 107,

111; Lewis Em. Dom., secs. 240, 254; Cooley Con. Lim. (6th ed.), 657; 56 Mich., 244; 41 N. J. Eq., 43; 50 N. Y., 525; 24 Cal., 427; 4 Hill., 76, 92; Angell on W. C., sec. 476; Lewis Em. Dom., 453; 18 Pick., 501; 7 Mass., 393; 15 Wis., 692; 50 N. H., 591; 41 Conn., 87; 12 Mass., 466; 104 N. Y., 471; 26 Kan., 345; 24 Cal., 427; 11 N. J. L., 106; 6 Pick., 94; 5 Hill, 170; 10 Me., 447; 36 N. J. L., 335; 78 N. C., 156; 2 Wood, sec. 841; Mills Em. Dom., sec. 81; 34 S. C., 62; Lewis Em. Dom., sec. 482; 2 Wood on N., sec. 760; 37 S. C., 487; 2 Hill, 535. *Damages after notice:* 2 Hill, 638; 3 Kent, *439; 11 Rich., 162; 1 McC., *544; 3 Suth. Dam., sec. 1037; Cooley on Torts, 585; 1 Wood on N., 441, 698; 2 Wood on N., 983, 1314.

*Messrs. Obear & Douglass,* also for appellant, cite: *Condemnation under Stat.:* Rev. Stat., 1743; 19 Stat., 1090; 4 Rich., 407; 15 S. C., 482; 37 S. C., 385; 26 S. C., 487; Angell on W. C., 63; 2 Hill, 535; 1 Wash. Real Prop., 400; 63 Wis., 329; 108 N.Y., 338; Herman on Estoppel, sec. 793; 81 Ky., 171; Wood on N., 846–7. *Damage after notice:* 23 S. C., 285; Cooley on Torts, 695–6, 71; 3 Senn, 192; 3 Strob., 273.

*Messrs. Abney & Thomas,* contra, cite: *Judicial notice:* Suth. on Stat. Con., 180, 193, 198; 103 U. S., 447; 4 Wind., 667; 40 Ia., 133; 4 Ind., 135; 12 Ency., 157, 158; 21 Minn., 222; 23 S. E. R., 378. *Construction of acts:* Suth. on Stat. Con., 218, 219, 239, 240, 241, 246, 323, 341, 344; 20 Johns, 735; 2 Wall., 377; 33 S. C., 181; 34 Ohio, 114; 103 Mass., 106; Lewis on Em. Dom., secs. 240, 254, 255; 11 Hump., 34; Black on Intp. Stat., 303; 33 S. C., 482; Con. 1868, art. 1, sec. 23; 36 S. C., 133; 38 S. C., 315; Rev. Stat., 1748; 21 S. C., 106; 2 Bail., 334, 554; 28 S. C., 368; 32 S. C., 382. *Compensation:* 5 Rich., 584; 11 Rich., 284; 15 S. C., 483, 487; 33 S. C., 497; 10 Rich., 389; 120 N. Y., 331; Lewis on Em. Dom., 665; 5 Met., 812; 2 Gray, 232; 133 Mass., 549; 108 Mass., 363; 15 S. C., 48, 483; 21 S. C., 421; 33 S. C., 217; 37 S. C., 387; 28 S. C., 400; 15 S. C., 476; 42

S. C., 431; 38 S. C., 312. *Damage after notice:* 115 N. Y., 203; 5 Rich., 420; 1 Rich. L., 444; 11 Rich., 153.

Oct. 17, 1896. The opinion of the Court was delivered by MR. JUSTICE JONES. This is an appeal from an order sustaining a demurrer to the complaint herein, on the grounds that it did not state facts sufficient to constitute a cause of action. The action was begun August 17th, 1894, to recover damages or compensation for injuries to the lands of plaintiff, situated in Lexington County, caused by a dam erected in 1889 across Broad River by the board of trustees of the Columbia Canal, under authority of an act approved December 24th, 1887. The complaint, which will be set out in full, at least, as to one of the causes of action, in the report of this case, sets up two causes of action—one referring to injuries to an island in Broad River, known as Mickler's Island; the other to injuries to a tract of 420 acres, lying on the western bank of the river, on which was a branch and a ditch leading to the river, by which, together with the river, this tract had been accustomed to be drained for agricultural purposes. At the hearing, the Court properly took judicial notice of the act approved December 24th, 1887, entitled "An act to incorporate the board of trustees of the Columbia Canal, to transfer to the said board the Columbia Canal, with the lands now held therewith and its appurtenances, and to develop the same," and of the amendatory act approved December 24th, 1890. The Court also took judicial notice of the fact that Broad River is declared to be a navigable stream and a public highway. To this the plaintiff did not object, and, as appellant, does not object here. These acts and this fact, then, must be read into the complaint as a part thereof. It appears that, under authority of the said act of 1887, the board of trustees of the Columbia Canal completed said dam in 1889, and by authority of the amendatory act of 1890 the trustees, on the 11th of January, 1892, conveyed the canal and dam and the pro-

perty appurtenant to the defendant company, and the defendant has ever since maintained and continued said dam. The complaint further alleges, substantially, that, by reason of the maintenance of the dam, the water of Broad River at plaintiff's land is raised six feet in the channel, thereby obstructing the free and accustomed flow of water and of sand and other sterile earth through the channel of the river and of the branch and ditch, and preventing the proper and usual drainage of these lands, thereby causing the waters to percolate through and water-log and soak these lands; that in times of ordinary freshets the waters of the river are caused to frequently overflow and inundate large portions of said land to such extent as to destroy the crops growing thereon, and wholly prevent the use of said lands for agricultural purposes; that the keeping up, maintaining, and continuing of the said dam by the defendant have been, and now is, without the consent of the plaintiff; and that the plaintiff has received no compensation for said injuries. The complaint also shows that on the 2d day of August, 1894, the plaintiff gave defendant notice of said nuisance, and requested the defendant to remove the same; but that defendant has failed and refused so to do. The date of defendant's refusal does not appear.

In the order sustaining the demurrer, the presiding Judge, Hon. O. W. Buchanan, reserved the right to file his grounds and reasons for sustaining the demurrer and dismissing the complaint, if he saw fit. These grounds and reasons have not been filed, but it appears in the case, that "the demurrer was sustained upon the several grounds set forth therein." The demurrer specifying the grounds thereof and appellant's exceptions to the order sustaining the same will appear in the report of the case.

The demurrer and the exceptions to the order sustaining the same raise practically the following questions:

1. Whether the statute of 1887 gave authority for the acts resulting in the injuries complained of, and afforded therefor a remedy which is exclusive.

2. Whether, assuming the affirmative of the first proposition, the complaint contains any statement of fact, showing a case outside of the application of such provision of law, such as acts of negligence in the construction or maintenance of the dam, or acts in excess of the authority conferred.

3. Distinct from the foregoing, and assuming the right to bring an action at common law, whether the complaint is fatally defective in not stating that plaintiff had been injured by defendant, after notice of the alleged nuisance and demand for its removal.

We will consider the last proposition first. I. It appears that the dam was constructed and the water raised in the channel of the river by the grantors of the defendant. The defendant was not the original creator of the alleged nuisance. "Where a defendant was not the original creator of the disturbance of an easement, an action will not lie against him until he has been requested to remove the cause of the disturbance which is on his land." *Elliott* v. *Rhett*, 5 Rich., 420. In Angell on Water Courses, 403, the same doctrine is announced as follows: "It has been held ever since Penuddock's case (15 Rep., 101), that where a party was not the original creator of the nuisance, he must have notice of it, and a request must be made to remove it before any action can be brought. Where a dam was erected and land in consequence flowed by the grantor of an individual, the grantee will not be liable for the damages in continuing the dam and flowing the land as before, except on proof of notice of damage and of a special request to remove the nuisance." This rule is based on the reason that it would be unjust to subject a person, not the creator the nuisance, to a suit for the nuisance of which he was ignorant, and which he did not intend to continue. In this case notice of the nuisance and request for its removal were received by the defendant fifteen days before the commencement of this action. The alleged grievances were caused by the "keeping up, maintaining and continuing the dam." The natural and accustomed flow of the water, &c., through

the channel of the river, of the branch, and of the ditch "has been, and *now is*, hindered and obstructed." The river, branch, and ditch "have been, and *now are*, prevented and hindered from effecting the proper, natural, and usual drainage of said land;" "the said waters *are* caused to percolate, &c." It is clear that the complaint alleges injury after, as well as before, the notice to remove the nuisance, and up to the commencement of the action. It may be that the injury sustained by plaintiff for which action would lie is small, but that was for the jury. We do not think the demurrer could be sustained on this ground.

II. Taking up the first proposition stated above. This is the crucial question in the case: Does the act of 1887 provide a remedy for the injuries complained of by plaintiff? Section 2 of this act provides: "That the said board of trustees are hereby authorized and directed, for the development of said canal, to take into their possession the said property, with all its appurtenances; and for the purpose of navigation, for providing an adequate water power for the use of the penitentiary, and for other purposes hereinafter named, they are hereby authorized, empowered, and directed to improve and develop the same." Section 3 provides: "That in order to improve and develop the power of said canal for navigation, to furnish the city of Columbia with an adequate supply of water and other hydraulic purposes, they are authorized to construct a dam across Broad River at, above or below the head of the present canal, as, by survey already made or hereafter to be made, may be deemed advisable for the development of the said water power; and in locating and constructing the said dam, they shall have the right to raise the water in the Broad River to such a height as will give a head and fall of thirty-seven feet at the south side of Gervais street at mean low water," &c. Section 4 provides: "That the said board of trustees shall have the right of way, and the same is hereby granted, in and along said course of the canal, for the construction and operation of the same. If

in enlarging and developing the said canal, or in construct-ing the said dam, it becomes necessary. to use the private property of any person or corporation for that purpose, the said board of trustees, for the sake of the public improve-ment contemplated in the construction of the said canal, and the better navigation of the Broad River and Congaree River, and the transportation of supplies to market, shall have the right to acquire such right of way in the manner now provided by law." Appellants contend for a strict construction of this act, and that while the power of emi-nent domain has been conferred, the manner prescribed for the exercise of it has been carefully and expressly limited to the securing of rights of way, properly so called, along the line of the canal and for the purpose of the construc-tion of the dam.

It is undoubtedly true, as a general rule, that statutes granting power to condemn private property for public use should be strictly construed. This principle was very strongly asserted in *Greenville & .Columbia R. R. Co.* v. *Nunnamaker,* 4 Rich., 111; but this same case asserts, also, another well settled rule of construction in this language, p. 115: "But in the construction of a charter, when the strict signification of a word is opposed to the apparent intention, it is proper to maintain the *design* and *purpose* of the charter even by neglect of the meaning of the word." Mr. Endlich, in his work on Interpretation of Statutes, § 343, shows that while the rule of strict construction applies to such statutes, the application of such rule must stop short of "defeating the object of the enactment." Mr. Black, in his work on the same subject, p. 303, says: that such statutes "are to receive a reasonably strict and guarded interpretation, and the power granted will extend no further than expressly stated, *or than is necessary to accomplish the general scope and purposes of the grant.*" So in *Ross* v. *Ry. Co.,* 33 S. C., 482, Chief Justice McIver, speaking for the Court, said: "When the legislature granted a charter to the defendant company, authorizing it to construct a railway between the points

designated, it must be regarded as having conferred upon said company the right to take and condemn such lands and rights of way as may be necessary to effect the purpose." This is the rule of construction as applied to such enterprises as railroads, built for private gain, but serving a useful public purpose. The construction of the Columbia Canal was a great public work begun by the State itself for important public purposes, among others, "for providing an adequate water power for the use of the penitentiary," "to improve and develop the power of said canal for navigation," "furnishing the city of Columbia with an adequate supply of water." The State created the board of trustees, giving it large discretionary powers, and *directed* it to improve and develop the said canal for the purposes named. "The principle of strict construction is less applicable where the powers are conferred on public bodies for essentially public purposes." Endlich on Int. Stat., § 355. "The right to condemn will be more readily inferred in favor of public corporations exercising powers solely for the public benefit than in favor of private individuals or corporations organized for pecuniary profit." Lewis Em. Domain, sec. 241. Art. 1, sec. 23, of the Constitution of 1868, under which this case arises, provides: "Private property shall not be taken or applied for public use, or for the use of corporations, or for private use, without the consent of the owner, or just compensation being made therefor: *Provided, however*, That laws may be made securing to persons or corporations the right of way over the lands of either persons or corporations, and, for works of internal improvement, the right to establish depots, stations, turnouts, etc.; but a just compensation shall, in all cases, be first made to the owner."

This provision of the Constitution "was inserted for the double purpose of maintaining the sanctity of private property, and, at the same time, promoting internal improvements, especially in respect to rights of way over land, and in establishing stations, &c., to facilitate transportation." *Ex parte Bacot*, 36 S. C., 133. The statute in question

must be interpreted in the light of the foregoing principles.
It is expressly provided in the third section of said act, that
in locating and constructing the said dam the board of
trustees shall have the right to raise the water in Broad
River to a specified height at a given point. This was
deemed essential to the development of the canal, which
the trustees were *directed* to do. The right to locate and
construct the dam necessarily, and by the terms of the act,
includes the right to raise the water in the channel of
Broad River. Assuming that plaintiff, as a proprietor on
Broad River, a fresh water navigable stream, owned to the
middle of the stream, as contended for by appellant, this
act, by necessary inference, if not in express words, when
it authorized the raising of the water in Broad River to a
given height, authorized the entry and invasion of the plain-
tiff's land to the extent necessary to maintain such height
of water. Now, in the fourth section of the act, the board
of trustees is granted necessary right of way "in and along
the course of the canal, for the construction and develop-
ment of the same." Under the well settled rule of statutory
construction, that when the subject matter of an act is
clearly ascertained, in order to effect the legislative intent
and carry out the general scope and purpose of the act,
general words will be restrained and words of narrow sig-
nification will be enlarged, a Court would be justified in
enlarging the words above quoted, to include, not only lands
strictly *in and along the course of the canal*, but all lands
necessary to be used in maintaining the dam, and the speci-
fied height of water, which are essential for the development
and operation of the canal. But section four goes further,
and provides, "if in enlarging and developing the said canal,
or *in constructing the said dam*, it becomes necessary to use
private property, &c., the said board of trustees, &c., shall
have the right to acquire such right of way in the manner
now provided by law." It will be observed, that in sec. 3,
the right to raise the water in the river was complied with
and made a part of the *construction of the dam*, and, now,

in sec. 4, right to use private property necessary in the construction of the dam is expressly given. Construing the terms used in the light of the manifest purpose of the act, we cannot give them the narrow and restricted interpretation contended for by appellant, limiting right of way to the actual line of the canal, and to the land actually occupied by structure called the dam, but must give them the enlarged meaning indicated above. The real dam is the damming of the water to the specified height, and must include all lands or easements necessary to maintain it. The legislature having directed the development of a great public work, for essentially public purposes, certainly meant to grant all rights, without which the power granted would be worthless. It is contended further, that, granting that the statute of 1887 vests the board of trustees with all the powers conferred by the condemnation statutes of this State, sections 1550 to 1561, General Statutes 1882 (section 1743 to 1755, Revised Statutes 1893), still the defendant could reap no benefit thereby without showing that the provisions of the statute have been called into actual operation, in the manner provided. Sec. 1743 provides: "Whenever any person or corporation shall be authorized by charter to construct * * * a canal * * * in this State, such person or corporation, before entering upon any lands for the purpose of construction, shall give to the owner thereof notice, in writing that the right of way over said lands is required," &c. It does not appear, on the face of the complaint, that any such notice was given. But in *Verdier* v. *R. R. Co.*, 15 S. C., 476, it is held that an owner may give permissson to enter for purpose of construction of a highway, without first receiving the notice, and that such may be inferred from facts and circumstances. See, also, to the same effect, *Tutt* v. *Ry. Co.*, 28 S. C., 400, which was an appeal from an order sustaining a demurrer. The complaint does not show that the plaintiff objected at all to the raising of the water in the river six feet on plaintiff's banks. This was done, in 1889, by defendant's grantor, without objection, so far as appears.

The allegation of the sixth paragraph of the complaint: "That the said keeping up, maintaining, and continuing of the said dam *by the defendant* has heretofore been, and now is, *without the consent* of the plaintiff," &c., relates to time beginning January 11th, 1892, when the dam, &c., was conveyed to defendant. The first and only evidence of objection was given on the 2d day of August, 1894, when the notice to remove the nuisance was served. The act authorizing the construction of the dam and raising the water in the river's channel was a public act, of which plaintiff is presumed to have known. The extensive and permanent character of so large a public work, so near plaintiff's land, with the manifest and avowed purpose of raising the water on plaintiff's land, with the inevitable result of interfering with the drainage of lands accustomed to be drained into the river in the territory, necessary to maintain the specified head of water in the river, the immediate increase of the water in the branch and ditch spoken of, the overflow of plaintiff's land in times of ordinary freshet, must surely have attracted plaintiff's attention. The entry upon and appropriation of plaintiff's land for the construction of the dam, was open and patent. The projection and maintenance of the water of the river six feet against his banks above the former level, with its inevitable results, was all the entry and use of plaintiff's land necessary to be made, and was as effective for the construction of the dam and canal, as an entry by workmen with pick and shovel to dig up the soil would be in the case of constructing a railroad. From the absence of objection, under these circumstances, permission to enter must be inferred. Section 1752, Rev. Stat. 1893, provides for such a case: "If, in any case, the owner of any land shall permit the person or corporation requiring the right of way over the same to enter upon the construction of a highway, without previous compensation, the owner shall have the right, after the highway shall have been constructed, to demand compensation, and to petition for an assessment of the same in the manner hereinbefore

directed: *Provided*, Such petition shall be filed within twelve months after the highway shall have been completed through his or her lands." This section has received interpretation in the case of *Aull* v. *R. R. Co.*, 42 S. C., 436, where Chief Justice McIver, as the Court's organ, says: "In sec. 1558 (1752, Rev. Stat.), the word used is 'permit,' showing an intention to provide for cases, which oftentimes have occurred, where the railway company, without first obtaining the 'consent' of the landowner, either expressly or by presumption, has been suffered or *permitted* to construct its road over the land of another. * * * If, therefore, a railway company, without first obtaining the consent of a landowner, and without first resorting to the proper proceedings to condemn the land, and have the compensation to which the landowner is entitled ascertained, proceeds to construct its road over the land of another, without objection, or by the implied permission of the landower, such landowner may, at any time within one year after the completion of the road, under the provision of section 1558 (1752), demand compensation in the manner therein prescribed." It is contended that the right to condemn "lands" does not include such use of, or injury to, the lands of plaintiff, as complained of in this case; but in *Ross* v. *R. R. Co.*, 33 S. C., 477, it was held that the word "lands" includes all rights or easements growing thereout. The compensation allowed by the statute is for the right of way, not simply the land. "The act, in effect, defines the term compensation to be the value of the land, together with such special damages as may be sustained by the landowner by reason of the construction of the road through his lands." *Bowen* v. *Atlantic etc. R. R. Co.*, 17 S. C., 579. Since the compensation is for the right of way, the right of way must include such use of land as subjects the landowner to any special damage for which compensation is allowed. There is no doubt, that the injuries complained of, in this case, could have been submitted to a jury to assess the amount of compensation, as matter of special damage. Of course, the per-

mission granted by plaintiff to the board of trustees to enter for construction of the dam and appurtenances did not deprive plaintiff of his constitutional right of compensation, for which a remedy was provided; it simply relieved the board of trustees so entering from the character of trespassers. *Tompkins* v. *Railroad Co.*, 21 S. C., 431. Neither is the defendant grantee a trespasser for continuing the use. The remedy provided by the statute is exclusive. *McLaughlin* v. *R. R. Co.*, 5 Rich., 584; *Fuller* v. *Eddings*, 11 Rich., 239; *Verdier* v. *R. R. Co.*, 15 S. C., 483; *Sams* v. *R. R. Co.*, 15 S. C., 487; *Ross* v. *R. R. Co.*, 33 S. C., 477.

III. Notwithstanding the legislature authorized the erection of the dam, and the raising of the water in the river, and provided an exclusive remedy to enable plaintiff to secure compensation for the "lands" taken, and special damages, nevertheless, an action at common law would be sustained for any injury resulting from *negligence* in the performance of authorized acts, as compensation for injury from such a cause was not contemplated by the legislature. The complaint, however, contains no allegations to bring the case within this rule. *Wallace* v. *R. R. Co.*, 34 S. C., 66, is in point here: "There must be some allegation of fact showing that the defendant, in doing the act which it was authorized to do, has either wantonly or through negligence done the act in such a manner as unnecessarily impaired or injured the rights of the plaintiff. * * * The wrong, if any, which was done to the plaintiff by the defendant did not consist in constructing its roadbed over streams flowing through the lands of the plaintiff, for that it had a legal right to do; nor did it consist necessarily in the fact that the natural flow of the water was obstructed, for that may have been the inevitable and unavoidable consequence of the construction of the railroad; but it may have consisted in the unskillful or negligent manner in which the work was done." Authorities on this subject are numerous. The point is tersely stated in *Watts* v. *Norfolk &c. R. R. Co.*, 19 S. E. Rep., 523: "The grant is

a defense as to all acts done within it, not outside of it." "Neither a right of way conferred by grant nor one conferred by condemnation will give exemption from damages consequential upon the improper or negligent exercise of the rights, and not from the fair, proper, and reasonable exercise of it, for the reason that neither in making such grant nor in the assessment upon an inquisition are damages contemplated or included that are to be solely attributed to such misuse of the right."

The demurrer was properly sustained, upon the grounds discussed in the second and third propositions above stated.

The judgment of the Circuit Court sustaining the demurrer and dismissing the complaint is affirmed.